ment made by defendant in recognition of the claim of a gift causa mortis. It appears that the plaintiff has brought the action in good faith, and, under the authorities, the fact that the estate is without assets is not alone sufficient to call for an order for security for costs. Rutherford v. Town of Madrid, 77 Hun, 545, 28 N. Y. Supp. 923; Hale v. Mason, 86 Hun, 499, 33 N. Y. Supp. 789; Brown v. Dean, 83 Hun, 613, 31 N. Y. Supp. 1126; Fagan v. Strong, 19 Civ. Proc. R. 88, 7 N. Y. Supp. 919; Sullivan v. McManus, 12 N. Y. Law J. 297; Ridgway v. Symons, 14 Misc. Rep. 78, 35 N. Y. Supp. 197; Cahn v. Sugenheimer (Sup.) 57 N. Y. Supp. 406.

For these reasons, the motion to compel the administrator to give security for costs is denied.

---

(39 App. Div. 369.)

## In re NORTON.

### In re CRANE'S WILL.

(Supreme Court, Appellate Division, Fourth Department. March 22, 1899.)

CHARITIES—VALIDITY OF DEVISES—STATUTES—CONSTRUCTION.

    Laws 1848, c. 319, § 6, provides that devises to corporations organized thereunder shall not be valid unless the will is executed two months before testator's death. Laws 1862, c. 187, § 2, provides that corporations organized thereunder "shall * * * be subject to the liabilities and provisions contained in the eighteenth chapter of the first part of the Revised Statutes, so far as the same are applicable." In 1862 there were five so-called editions of the Revised Statutes in common use, but the term "Revised Statutes" had a well-settled meaning in the state, which denoted the statutes published under that title pursuant to Laws 1828, c. 20, and the amendments to those statutes. *Held*, that a corporation organized under the 1862 act is not governed by the provisions in the 1848 act though embodied in the first part of chapter 18 of two of the so-called editions of the Revised Statutes.

    Hardin, P. J., and Spring, J., dissenting.

Appeal from surrogate's court, Ontario county.

In the matter of the judicial settlement of the accounts of William D. Norton, executor of Mary Ann Crane, deceased. Caroline C. Murphy and others, next of kin of the testatrix, appeal from that part of the decree adjudging the Board of Foreign Missions of the Presbyterian Church in the United States of America to be entitled to one-half the residue of the estate of the testatrix under the will. Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, McLENNAN, and SPRING, JJ.

J. H. Metcalf, for appellants.

C. A. Richardson, for respondent Board of Foreign Missions.

FOLLETT, J. November 17, 1893, Mary Ann Crane executed her last will and testament, by which she divided the residue of her estate between the Board of Home Missions of the Presbyterian Church in the United States of America and the Board of Foreign Missions of the Presbyterian Church in the United States of America, and she died January 10, 1894, within two months after making her will.

The only question involved in this case is whether the provision contained in section 6 of chapter 319 of the Laws of 1848, declaring that devises, and bequests to corporations organized under that act shall not be valid unless the will is executed at least two months before the death of the testator, is applicable to the Board of Foreign Missions. It is settled that this provision does not apply to corporations not organized under chapter 319 of the Laws of 1848 and the acts amendatory thereof. Hollis v. Seminary, 95 N. Y. 166; In re Kavanagh's Will, 125 N. Y. 418, 26 N. E. 470. The rule declared in these cases is, of course, subject to the exception that it does not apply to corporations organized under other acts which by direct reference make section 6 of chapter 319 of the Laws of 1848 applicable to corporations organized under such other acts. The Board of Foreign Missions was specially incorporated by chapter 187 of the Laws of 1862, passed April 12, 1862, and the inhibition contained in section 6 of chapter 319 of the Laws of 1848 is not applicable to this corporation and the bequest made in its behalf, unless chapter 319 of the Laws of 1848 is so referred to in the act by which the Board of Foreign Missions was incorporated that the inhibitory provision is made part of the later act. Thus far the litigants agree. Is the time limit contained in section 6 of chapter 319 of the Laws of 1848 referred to in chapter 187 of the Laws of 1862, and made applicable to the Board of Foreign Missions? The only reference in chapter 187 of the Laws of 1862 to any other statute is contained in the second section, of which the following is a copy:

"Sec. 2. The said corporation shall possess the general powers, rights and privileges, and be subject to the liabilities and provisions contained in the eighteenth chapter of the first part of the Revised Statutes, so far as the same are applicable, and also subject to the provisions of chapter three hundred and sixty of the Laws of Eighteen Hundred and Sixty."

It is contended in behalf of the next of kin that the words "subject to the liabilities and provisions contained in the eighteenth chapter of the first part of the Revised Statutes, so far as the same are applicable," make chapter 319 of the Laws of 1848 applicable to this corporation, because in 1852 a so-called edition of the Revised Statutes was published (Banks' 4th Ed.), in which chapter 319 of the Laws of 1848 was included as title 6 of chapter 18 of the first part of the Revised Statutes, and in 1859 a so-called edition of the Revised Statutes was published (Banks' 5th Ed.), in which chapter 319 of the Laws of 1848 was included as title 7 of chapter 18 of the first part of the Revised Statutes. When chapter 187 of the Laws of 1862 was passed, there were five so-called editions of the Revised Statutes in common use,—the two above referred to, and the three editions edited by the revisers. The first edited by the revisers was published in 1829, the second in 1836, and the third in 1846, which was the year of the adoption of the new constitution, after which general laws relating more or less closely to various statutes contained in the Revised Statutes, but which were not amendments to those statutes, were passed. The editors of the editions of the Revised Statutes published since 1846, except the edition edited by Judge Ed-

monds and published in 1863, assumed to incorporate these general laws into the Revised Statutes, but by so doing they did not become a part of those statutes.    Before determining what the term "Revised Statutes" means, as used in the second section of chapter 187 of the Laws of 1862, above quoted, it is well to have in mind the rule that words and terms having a precise and well-settled meaning in the jurisprudence of a country are to be understood in the same sense when used in its statutes, unless a different meaning is unmistakably intended.    Ehrsam v. City of Utica, 37 App. Div. 272, 55 N. Y. Supp. 942, and cases cited.    In 1862, as now, the term "Revised Statutes" had a well-settled meaning in the jurisprudence of this state, and denoted the statutes published under that title, pursuant to chapter 20 of the Laws of 1828 and to the amendments subsequently made to those statutes.    The general laws published since 1828 are not part of the Revised Statutes, and have never been recognized as such, so far as I know, by any judicial decision.    Unless it appears that the legislature unmistakably intended that the term "Revised Statutes," as used in chapter 187 of the Laws of 1862, should refer to some other statutes than those bearing that name, it must be held that the reference in the statute of 1862 was to the Revised Statutes then existing, and not to general statutes published under that name.

I am unable to find any evidence in the act that the legislature intended to refer to general statutes instead of to the eighteenth chapter of the Revised Statutes.    If the rule be declared that a mere reference in a subsequent statute to a chapter of the Revised Statutes includes all general acts printed in the parts of such chapter in the so-called editions of the Revised Statutes, why may not the repeal of chapter 18 of the first part of the Revised Statutes by chapter 687 of the Laws of 1892, by a general reference thereto, be held to repeal the general statutes printed as part of that chapter in the editions of the Revised Statutes then in use, which would effect a repeal of the chapter under which the next of kin claim the bequest to be invalid?    During the last 15 years many chapters—the greater part of the Revised Statutes—have been repealed by reference to the original chapters, and to hold that such reference embraces and affects all laws printed as part of such chapters in the so-called editions of the Revised Statutes would, I fear, produce great confusion in the statute law of this state.    The decisions cited to sustain the contention of the appellants do not seem to me in point.    In People v. Clute, 50 N. Y. 451, an amendment to "section twenty-two of chapter twenty of title one of the first part of the Revised Statutes, fourth edition," was held effective as an amendment to section 22 as printed in such edition.    Section 22, as printed in that edition, read:

"No supervisor of any town, or county treasurer, shall be appointed to hold the office of superintendent of the poor in any county in this state."

This section was no part of the Revised Statutes, but was a general law subsequently passed.    Laws 1829, c. 352.    In 1853 (Laws 1853, c. 80), the following act was passed:

"Sec. 1. Section twenty-two, of chapter twenty, of title one, of the first part of the Revised Statutes, fourth edition, is hereby amended so as to read as follows:    'Sec. 22. No supervisor of any town, or county treasurer shall be elected

or appointed to hold the office of superintendent of the poor, nor shall any superintendent of the poor be appointed to the office of keeper of the poor house in any county of this state.'"

Because this amendatory statute expressly referred to the fourth edition of the Revised Statutes, and because the amendatory act related clearly to chapter 352 of the Laws of 1829, it was held that chapter 80 of the Laws of 1853 was intended as an amendment of chapter 352 of the Laws of 1829. Both acts related to the same subject-matter, and the last act was plainly intended as an amendment of the first act. It is difficult to see how that case could have been otherwise decided. In Re Kavanagh's Will, 125 N. Y. 418, 26 N. E. 470, it was held that a provision in a special act incorporating a charitable corporation, "Said corporation shall possess the general powers and be subject to the general restrictions prescribed in the third title of the eighteenth chapter of the Revised Statutes, and also subject to the provision of title seven of part one of chapter eighteen of the Revised Statutes in relation to devises and bequests by law," referred to chapter 319 of the Laws of 1848, which was printed in the so-called fifth edition of the Revised Statutes as title 7 of chapter 18. Here, as in the former case, unless the reference was to the seventh title of chapter 18 of the fifth edition, it was meaningless; and it was held that the legislature intended to subject the corporation to the provisions of chapter 319 of the Laws of 1848. The court said: "Unless the legislature, in section seven of this act, referred to that edition of the Revised Statutes by the language it used, then the language has no meaning whatever." The intention of the legislature was unmistakable. In the case at bar the reference in the act of 1862 to the eighteenth chapter of the first part of the Revised Statutes is not meaningless. Title 3 of that chapter is entitled, "Of General Powers, Privileges and Liabilities of Corporations," and contains 10 sections, all of which, except the fourth and fifth, are applicable to this corporation; and I am of the opinion that the reference in the second section of chapter 187 of the Laws of 1862 was to this title of chapter 18 of the first part of the Revised Statutes.

In looking through the Session Laws I find, in many of the special acts creating corporations, references to chapter 18 of the first part of the Revised Statutes, but I do not believe that by these references the legislature intended to make the general laws printed in the editions of the Revised Statutes a part of the incorporating acts. The late general term of the First department has decided the very question involved in this case. Kerr v. Dougherty, 17 Hun, 341, affirmed in 79 N. Y. 327. By a careful examination of the case and record it will be seen that the question was decided. In 1876 a testator made his will, and died within 23 days thereafter. It contained this clause: "(6) I give and bequeath to the Presbyterian Board of Foreign Missions the sum of $5,000." The corporation mentioned in this clause is the one involved in the case at bar. The validity of this bequest and various charitable bequests was contested in the special and general terms on the ground that they were void under the two-months' time limit contained in section 6 of chapter 319 of the Laws of 1848, which the contestants asserted was applicable by reason of the ref-

erence in section 2 to the eighteenth chapter of the first part of the Revised Statutes. The special term held the sixth clause above quoted valid (79 N. Y. 331), which judgment was affirmed at general term, and no appeal was taken from that part of the judgment. The case went to the court of appeals on questions arising between other parties. In Hollis v. Seminary, supra, the court, in referring to Kerr v. Dougherty, said: "Then, too, in the sixth clause of the will in that case, there was a bequest of $5,000 to the Presbyterian Board of Foreign Missions, a corporation organized by chapter 187 of the Laws of 1862. The act was silent as to the two-months limitation, and the bequest was held valid by the supreme court, and all parties acquiesced in the decision." 95 N. Y. 176. I think the decree of the surrogate's court is right, and that it might well be affirmed on the opinion of the learned surrogate, which is full and satisfactory.

The decree of the surrogate's court should be affirmed, with costs payable by the appellants to the respondent. All concur, except HARDIN, P. J., and SPRING, J., dissenting.

SPRING, J. (dissenting). Mary Ann Crane, of the town of Phelps, in this county, executed her last will and testament on the 17th day of November, 1893, and died on the 10th day of January following. She left only collateral relatives; and, after making a few general legacies, she gave all the residuum of her estate to the Board of Home Missions of the Presbyterian Church "and to the Board of Foreign Missions of the Presbyterian Church in the United States of America, to be equally divided between the two said religious organizations or bodies." The will was admitted to probate, and the executors named, after the administration of the estate, had a judicial settlement of their account in the surrogate's court, and a decree was entered directing the distribution of $3,000 to each of these two corporate beneficiaries. The next of kin contested the validity of the bequest to the Board of Foreign Missions on the ground that testatrix died within two months after the execution of the will, thus invalidating the legacy as to this donee, it is claimed, as provided by section 6, c. 319 of the Laws of 1848. The Board of Foreign Missions was incorporated by chapter 187 of the Laws of 1862. This act consists of two sections. The first provides that the persons designated are constituted a body corporate, naming it and defining the purposes of the incorporation, with capacity to receive and own real estate and power to convey the same. Section 2 of the act is as follows:

"Sec. 2. The said corporation shall possess the general powers, rights and privileges, and be subject to the liabilities and provisions contained in the eighteenth chapter of the first part of the Revised Statutes, so far as the same are applicable, and also subject to the provisions of chapter three hundred and sixty of the Laws of Eighteen Hundred and Sixty."

Does this reference to the Revised Statutes relate to the original authorized edition, published in pursuance of the act of the legislature of 1828, and which, in the restricted, generic sense, may be said to be the Revised Statutes, or does it include that term as commonly used, embodying the various editions of legislative enactments? The

question is a troublesome one. Chapter 18 of the Revised Statutes, published by the authority of the Legislature of 1828, contains very little to which the reference in the act creating the Board of Foreign Missions can appertain. The first title of that chapter relates exclusively to turnpike corporations; the second, to moneyed corporations; the third, to "the general powers, privileges and liabilities of corporations"; and the fourth and last, to certain designated corporations, the provisions of which, in specific terms, are not applicable to religious societies. Therefore, the reference in this statute of 1862, if it means the Revised Statutes of 1828, must be restricted to title 3 of chapter 18. The powers therein granted to corporations are perpetual succession, to sue, to use a seal, to hold and convey real estate, to appoint officers, and to make by-laws. The marrow of their privileges is either embodied specifically in the act of incorporation by the law of 1862, as the right of perpetual succession and the power to hold and convey real estate, or else are attributes of every corporation. There was no necessity of tacking onto this act the Revised Statutes, so far as any of the powers bestowed upon the corporation are concerned. The restrictions imposed in that act are upon its exercising the privileges of banking, which is not within the scope of its incorporation, and that pertaining to its capital stock, which is only applicable to moneyed corporations as then existing, and also one section as to the number of trustees constituting a quorum, and a subdivision providing that, in case a corporation shall not organize and commence business within a year, its corporate powers shall cease. It is very obvious this title pertains in the main to moneyed corporations, and contains no restrictions and limitations of such grave import as to justify the legislature in particularly superadding them to the charter creating this corporation. Wherever pertinent, they inhere in the corporation without definite allusion. This organization was religious and benevolent in its purpose, and institutions of that character were subject to restrictions peculiar to themselves. Chapter 319 of the Laws of 1848 was an independent act, but it was included in the edition of the Revised Statutes published in 1852, and in each succeeding edition; and they were the common and accepted editions of that work, in use at the time of the passage of the act creating this beneficiary. Of that, courts take judicial notice. In re Kavanagh's Will, 125 N. Y. 418–421, 26 N. E. 470. With this law forming a component part of the Revised Statutes, lawyers, legislators, and people generally were quite familiar, and a reference to the Revised Statutes would be regarded as signifying the editions published and in common use under that designation. Only the abstruse, the curious, and the especially learned in statutory law would conceive it related to the original and almost obsolete publication of that work. Nor can we say these various editions have been utterly without warrant or legislative recognition. Every republication has been by legislative permission. The various state libraries have been provided with them under the direction of the legislature, and some of them were attested by the secretary of state. People v. Clute, 50 N. Y. 451. The act of 1848 is applicable only to corporations organized under it, and a like clause is frequently contained in

legislative enactments. Without this restriction, the law would be applicable to every corporation, and no reference to the statute would be essential to make its provisions pertain to a new corporation. But where the corporation is under a special act, it is necessary to make the general law controlling in definite terms. That was done in this case. In fact, the law of 1848 is the general act for the formation of benevolent and missionary societies, and is the one under which all are incorporated, unless by specific authority of the legislature. Prior to 1862 it had been amended three times, but, in so far as its provisions can affect this beneficiary, it remained unchanged. It was an innovation in the law restricting the taking of property by will. These facts, coupled with its general scope, made it known of all men as the one enactment governing religious societies of this character. It is the one act in the Revised Statutes existing, at the time of the incorporation of the Board of Foreign Missions, to which the reference is in any way pertinent. Unless the allusion to chapter 18 is to include the act of 1848, then the language is meaningless. The act creating this missionary society not only imposes upon it the restrictions of the Revised Statutes, but makes it subject to the provisions of chapter 360 of the Laws of 1860. That act circumscribed the power of a testator to devise or bequeath to a benevolent or missionary society more than one-half of his estate, where he left a wife, a child, or parent. It would be a strange commentary on the oversight of the legislature gravely to embody this restriction in the act authorizing incorporation, and then omit the imposition of the burden of a kindred statute making such bequests ineffective unless the testator lived two months after the execution of his will. Each was a part of the law of the land; and the two-months limitation had been in force for fourteen years, and was probably known to the ordinary assemblyman. In the case of In re Kavanagh's Will, 125 N. Y. 418, 26 N. E. 470, the allusion in the statute was to title 7 of the Revised Statutes, and there was no such title in the original publication of that work; so, it was necessary to hold that the reference in that act to the title by that number signified a later edition of the Revised Statutes. While that case is not precisely in point here, yet the reasoning is suggestive. The mention of the Revised Statutes is fraught with no meaning in this case, unless it can be held to include and to advert to that legislative enactment of special import to missionary and benevolent societies, and which is of that gravity and general application that it had become a part of the Revised Statutes by general sanction and usage.

It is urged by the counsel for the respondent that, as the act of 1848 is in specific terms limited to bodies incorporated in pursuance of that act, it is not applicable to the Board of Foreign Missions. If the act of 1848 was a part of the Revised Statutes, their inclusion in the act incorporating the board carries along this enactment of 1848. Kerr v. Dougherty, 79 N. Y. 327; Stephenson v. Short, 92 N. Y. 433. That act is of general scope and design. That fact, however, does not prevent a corporation being formed under the express warrant of the legislature with cognate privileges and restric-

414 57 NEW YORK SUPPLEMENT (Sup. Ct.
and 91 New York State Reporter.

tions. The legislature, in order to make effective the limitations as well as the privileges of the general act, indicates the intention by so stating in the act creating the corporation. If there are a dozen acts embodied in one chapter of the Revised Statutes, a statement that the corporation is amenable to the limitations, and entitled to the benefits, set forth in that chapter, in effect includes them all in the warrant of authority. After all, it comes back to the pivotal question as to what was meant by the reference to the Revised Statutes; and I believe the common acceptation of that term was in the minds of the legislators who enacted the statute.

It is contended by the respondent's counsel that the aim of the courts is to sustain the bequest of a competent testator; that a man has a right to dispose of his own as he listeth. True, subject to the power of the lawmaking body to impose certain restrictions. The welfare of the family must be protected against the caprices of a misguided enthusiast. So, there has been very wisely a limit put upon the amount a father can bequeath to any benevolent corporation, however uplifting its purpose may be. Akin to this, to protect a person in failing health or in the imbecility of advanced age, it has been enacted that a bequest of this character is invalid if the testator fails to survive the publication of his will for the period of 60 days. These two provisions are no mere byplay, and the wisdom of their enactment has been demonstrated in the many years they have been in force.

The decree of the surrogate should be reversed, and the costs and disbursements of all parties paid out of the funds in the hands of the executors.

HARDIN, P. J., concurs.