[No. 16638. Department Two. March 9, 1922.]

*In the Matter of the Estate of* S. G. HILL.
FRED D. HILL, *Respondent,* v. GEORGE W.
UPPER, *Appellant.*[1]

CHARITIES (1, 2) — VALIDITY — PURPOSES — PUBLIC POLICY. A residuary devise is void as detrimental to public health and against public policy where it provided for the teaching of a system of treatment confined to the doctrine of certain named text books which advanced medical science and the testimony almost conclusively shows would result in sickness and death (HOVEY, J., dissenting).

Appeal from a judgment of the superior court for King county, Gilliam, J., entered April 7, 1921, upon findings in favor of the plaintiff, in an action to construe a will, tried to the court. Affirmed.

*Kerr, McCord & Ivey (Weightstill Woods,* of counsel), for appellant.

*H. D. Moore, H. N. Moore,* and *Thomas L. Marshall,* for respondent.

MAIN, J.—The purpose of this action was to construe a paragraph in the will of S. G. Hill, deceased. The petitioner was an heir and the defendant was the executor. The trial resulted in findings of fact, conclusions of law and a judgment holding that the paragraph of the will in controversy was void and the property sought to be disposed of thereby would pass to the heirs of the deceased. From this judgment, the executor appeals.

S. G. Hill died in the city of Seattle sometime during the month of May, 1919. His will was admitted to probate on the second day of June of that year. Thereafter the respondent brought this action for the pur-

[1]Reported in 204 Pac. 1055; 207 Pac. 689.

pose of testing the validity of one paragraph of the will. It will not be necessary here to set out in full the will or the paragraph involved, but only such portions as are material to present the question to be determined. The testator, after stating that he recognized the effectiveness and curative value of homeopathic remedies and treatment as outlined in certain books hereinafter named in the excerpt from the will quoted, and deploring the present lack of instruction in schools of medicine, directed the trustee named in the will to invest the residue of his estate in bonds and apply the income in perpetuity, after deducting the expense of handling the trust, to pay for the services of a competent homeopathic physician or physicians who should give instruction ''at or near'' some reputable homeopathic school of medicine in the United States

''to demonstrate to said students the effectiveness of said homeopathic remedies and treatment in cases of chronic diseases; said physician in said lectures and clinics, shall use as text books and confine the instruction to the proposition, principles and methods laid down in Hahnemann's Organon of the Art of Healing; The Nature of Chronic Diseases (Hahnemann's), and J. T. Kent's Lectures on Homeopathic Philosophy, and also shall be required to teach his students the use and application of Kent's Repertory of Homeopathic Materia Medica.

''Said trustee shall have the power to select, replace and remove said physician, and the selection from time to time of the homeopathic school, of medicine, at or near which said physician shall teach.

''The instruction and clinics to be free and open to all students of medicine who may desire to avail themselves thereof.

''Realizing that many schools of medicine and numerous physicians are antagonistic and apathetic in regard to the homeopathic principles and methods

herein referred to, it is my will and wish that said trustee and its successors exercise care and diligence in determining the qualifications of said physicians as they may appoint hereunder and of the medical school or schools, at or near which said physician shall teach, to the end that there shall be no subversion or distortion of the instruction and information which I desire may become available to such students in medicine who may desire to receive the same.''

This excerpt from the will, it will be noticed, provides that a homeopathic physician, who shall give the instruction, shall be confined to ''use as text books and confine the instruction to the proposition, principles and methods laid down in Hahnemann's Organon of the Art of Healing; The Nature of Chronic Diseases (Hahnemann's), and J. T. Kent's Lectures on Homeopathic Philosophy, and also shall be required to teach his students the use and application of Kent's Repertory of Homeopathic Materia Medica.'' The latter clause in the will shows that the books mentioned shall be taught without any ''subversion or distortion.'' The trial court found that if the principles, theories and methods of the books mentioned should be taught without any subversion or distortion, as required by the will, that it would lead to sickness and death, corresponding to the extent that they were followed by medical students, and would do great harm to the public health. And further, that the teaching of the books, without subversion or distortion, would tend to deprive the sick from receiving proper and adequate treatment which is recognized by modern science as being necessary in curing disease and relieving pain and suffering.

Upon the trial there was testimony by physicians who practiced according to the methods and principles of the allopathic school, and also those who practiced

according to the principles and methods of the homeopathic school. This is not a controversy between the two schools. Disregarding entirely the testimony of the allopathic physicians and looking only to the evidence of those testifying who belonged to the homeopathic school, the great weight of the evidence sustains the finding or conclusion of the trial court that, if the books mentioned were taught without subversion or distortion, it would lead to sickness and death and would deprive ailing persons from receiving treatment which is recognized by the modern homeopathic school. It might be said that the evidence almost conclusively established this fact. The evidence shows that, since the books mentioned were written, there has been a large development in medical science as practiced by the homeopathic school and that the books are not modern, and if the principles and methods there taught only were applied in the healing of disease that it would be detrimental to the public health.

Since the evidence shows that the teaching of the books without a subversion or distortion would be inimical to the public health, the question arises whether the bequest for this reason is void. It can hardly be doubted that, if it were a bequest which tended to support an immoral purpose as recognized by modern standards of correct conduct, the will would be void for this reason. We do not understand the appellant to contend otherwise. If a will making a bequest for an immoral purpose should be declared void, by the same course of reasoning it would follow that, when providing for the teaching of medicine which would be detrimental to the public health, it would likewise be illegal and could not be carried into effect. In other words, in such a case it becomes the duty of the court to declare that the bequest is void on the ground

of public policy.  Speaking on this question in *Hollis v. Drew Theological Seminary,* 95 N. Y. 166, the court said:

"The courts will not enforce contracts or the payment of legacies which are against public policy.  But it is not always easy to determine when contracts and legacies are against public policy.  Some cases are plain and have been settled by the repeated decisions of the courts.  Contracts tending to undermine public morals, to endanger the public health or the public safety, to prevent competition at judicial sales, to improperly influence legislation or the action of public officers or the administration of justice, and to unreasonably restrain trade or marriage; all these have been condemned as against public policy."

If the bequest had not been limited to instruction in the books mentioned, without subversion and distortion, and had recognized that the principles and methods of these books were to be taught in connection with the modern methods of the homeopathic school, an entirely different question would be presented.  As the record stands, the bequest and the teachings required thereby are not supported by any modern school of medicine.

It is claimed that the bequest was void also on other grounds, but these need not be considered, because the bequest being void on the ground of public policy disposes of the case.

The judgment will be affirmed.

PARKER, C. J., HOLCOMB, and MACKINTOSH, JJ., concur.

HOVEY, J. (dissenting)—I dissent.  The testator had an undoubted right to make such disposition of his property as he saw fit, unless the purpose can be said to be illegal.  He chose for his subject a system of medicine which appears to be out of date, but that

was his privilege, even though it may seem a waste of a large sum of money. The testimony offered was from physicians of modern schools and the method proposed was, in their view, not proper medical treatment, and they drew as conclusions that the proposed system would be ineffective, but there was nothing to the effect that it would be injurious. The bad results would follow, in their opinion, from a lack of some treatment approved by them. For the courts to say what is or is not the proper method of treating the sick or afflicted is entirely beyond their province. It is possible that the bequest is invalid because of impracticability of performance, but that is not the ground of the decision.

### On Rehearing.

[*En Banc.*   June 20, 1922.]

Per Curiam.—This cause was reargued before the court *En Banc* on June 1, 1922. Deeming ourselves fully advised in the premises, and a majority of the judges being of the opinion that the cause was correctly disposed of by the decision of Department Two, *ante* p. 62, 204 Pac. 1055, the judgment is affirmed for the reasons therein stated and as therein directed.