Jasen, J.
(dissenting). The majority candidly concedes that the former Mayor Walker’s personal copies of the respective adoption decrees pertaining to his children were intended to be included as “any and all of my personal property” bequeathed to petitioners by his will, but holds, “[notwithstanding testator’s intent, the legacy may not be given effect because * * * to do so would be contrary to the public policy of New York” (Domestic Relations Law § 114) of protecting “the identity and privacy of the natural parents.”
What public policy is involved in this proceeding where petitioners seek only private personal property bequeathed to them by their father? This case does not involve adoptees who, in compliance with or in contravention of Domestic Relations Law § 114, seek access to sealed court records of a New York adoption proceeding. Rather, this case involves construction of a will probated in the courts of this State to determine whether the testator intended the copies of the Illinois adoption proceedings, part of his personal papers which were lawfully obtained by him, to pass to the petitioners as part of his personal property.
*362 The majority accords Domestic Relations Law § 114 an overly expansive reach by extending the protections of the statute beyond official sealed adoption records to personal papers in private hands. Where, as here, there exist governing constitutional or statutory provisions, they delineate the outer boundaries of what is the public policy of this State. (Straus & Co. v Canadian Pac. Ry. Co., 254 NY 407, 413; Messersmith v American Fid. Co., 232 NY 161, 163 [Cardozo, J.]; cf. Gellhorn, Contracts and Public Policy, 35 Colum L Rev 679.) Such expressions of public policy limit and guide the judiciary as well as private litigants. Hence, the majority imposes an impermissible restriction upon the testamentary devolution of personalty and an unauthorized restraint upon the free dissemination of information contained in and transmitted by the private papers of the testator’s estate.
EPTL 3-5.1 defines personal property as any property other than real property. Thus, by bequeathing “any and all of my personal property” to petitioners, the language clearly indicates the testator’s intent thereby to dispose of all personal property, including personal papers, unless manifestly excluded. Indeed, under the rationale of the majority, the testamentary disposition would be defeated even if the legacy had bequeathed “any and all of my personal property, including my personal copies of Illinois adoption records relating to my beloved children.” Applying the EPTL to the testamentary provision in question, that is precisely what was bequeathed.
The irrelevance of the rationale of the majority’s public policy holding pertaining to the alleged privacy rights of the petitioners’ natural parents is best illustrated by the fact that the State of Illinois, the situs of the adoptions, did not extend protection, to such privacy interests until 1961, approximately 25 years after the adoptions had taken place and some 15 years after the legacy of Mayor Walker’s will had vested in the petitioners.*
*363 Moreover, the fact which perhaps most undermines the public policy rationale is that Mayor Walker, without violating any law of New York or Illinois, could have made an inter vivos transfer of the copies of the adoption decrees and the information contained therein to the petitioners. Public policy considerations should not be extended to transfers of personal property, including personal papers as we have here, to legatees pursuant to will.
The authorities relied upon by the majority, in support of its position that public policy may be defined in a manner beyond the text of the statute, are, in reality, supportive of a view which strongly disfavors government intrusion into the testamentary disposition of private property and which recognizes that the definition of public policy must be grounded in the uhembellished words of the statute. In Matter of Johnson (59 NY2d 461), this court, albeit upon 14th Amendment grounds, permitted the machinery of the courts to be utilized for the purpose of enforcing gender restrictive provisions in private charitable trusts, notwithstanding the finding that the eradication of gender-based discrimination is an important public policy of this State. (Matter of Johnson, supra, at p 472.)
In Hollis v Drew Theol. Seminary (95 NY 166, 171-172), this court articulated a classic exposition upon the role of the judiciary in defining public policy. In Hollis, it was said: “It is difficult to define and limit the power thus to enforce public policy which is not found in the statute law, and it should be exercised only in clear cases, and generally within limits already defined by decisions of acknowledged authority, based upon rules of the common law. There is certainly no occasion for stretching the power so as to apply it to new or doubtful cases in a State where the legislature is in session one-third of the year, and thus competent to indicate the public will as to any line of supposed public policy * * * Whatever the law condemns is against the policy of the law, and whatever the law expressly, albeit unwisely, permits, cannot be condemned by the courts as against public policy.” (Hollis v Drew Theol. Seminary, 95 NY 166,171-172, supra.) Thus, the cases relied upon by the majority certainly do not authorize this court to judicially engraft an amendment to Domestic Relations Law § 114 to enjoin transmittal of private papers, as well as sealed court records.
In sum, the public policy of New York is that the testator can dispose of property as he or she sees fit, so long as the disposition violates no law of the State. Since the copies of the adoption decrees at issue here were properly and lawfully obtained by the *364 testator and could have been transferred to the petitioners during his lifetime, and were, as the majority concedes, part of his personal property at the time of his death, I would reverse the order of the Appellate Division and remand to the Surrogate’s Court, New York County, to grant the relief requested in the petition.
Chief Judge Wachtler and Judges Meyer and Kaye concur with Judge Simons; Judge Jasen dissents and votes to reverse i n a separate opinion; Judge Alexander taking no part.
Order affirmed, with costs.

 From 1873 to 1924, adoption records in New York were public. (Alma Socy. v Mellon, 601 F2d 1225,1229, n 4, cert denied 444 US 995 [see, L 1924, ch 323, Domestic Relations Law (former) § 113].) Nothing in chapter 323 suggests that adoption records created prior to July 1, 1924, the effective date of the statute, were to be sealed. Moreover, there is authority for the proposition that the effect and disposition of adoption records are governed by the law in effect at the time of the adoption. (Matter of MacEwan, 280 App Div 193, 194.) Illinois, the State with the most significant contacts with the adoptions at issue, did not establish the confidentiality of adoption records until 1961. The public policy of Illinois should not be applied retroactively by this State inasmuch as this State’s own public policy, establishing the confidentiality of adoption records after 1924, is itself not to be given retroactive effect.