. HUGHES v. STOUTENBURGH et al.   (No. 7380.)

(Supreme Court, Appellate Division, First Department. June 18, 1915.)

1. WILLS ☞15—RESTRICTIONS ON GIFTS FOR CHARITABLE AND RELIGIOUS PURPOSES—STATUTORY PROVISIONS.

Under Laws 1860, c. 360, limiting devises and bequests to charitable and religious uses, where the testator leaves a husband, wife, child, or parent, to one-half of the estate, one-half of the net value of an estate after the payment of debts was lawfully distributable to churches, institutions, and societies within the statute.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 36; Dec. Dig. ☞15.]

2. WILLS ☞13—RESTRICTIONS ON GIFTS FOR CHARITABLE AND RELIGIOUS PURPOSES—STATUTORY PROVISIONS.

Where a will contained provisions for the testator's widow in lieu of dower, and all parties in interest acquiesced in a decree of distribution pursuant to the will, and the executors complied therewith, the widow's dower was thereby released as of the date of the death of the testator, and it was rightly not considered in determining whether more than one-half the estate was given to charitable uses, in violation of Laws 1860, c. 360.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 32–34, 38, 39; Dec. Dig. ☞13.]

3. WILLS ☞686—CONSTRUCTION—INTENTION OF TESTATOR.

Where a testator gave property in trust for the support and education of a minor son during his minority, and provided that if he died before attaining majority the trust fund should be paid to an orphan asylum, it was plainly the intention of the testator that he should take the corpus

of the trust fund when he became of age, though it was not expressly so provided.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1631–1637; Dec. Dig. ⊕686.]

**4. WILLS ⊕514—CONSTRUCTION—DESIGNATION OF DEVISEES—"SOCIETIES."**

A will contained bequests to certain churches and societies, designated by the testator as churches and societies, and to certain other religious or charitable institutions. It also gave property in trust for the widow during her life, and for a minor son during minority, and provided that, if the son died before attaining his majority, the amount given in trust for the son and $10,000 of the amount given in trust for the widow should be paid to an orphan asylum, and the remainder of the fund given in trust for the widow should be divided among the churches and societies named in the will. The residuary estate was given to the "churches and societies hereinbefore named." It was contended that the testator could not have classed the asylum as a society, as this would give it a further share in the fund given in trust for the widow, in addition to the $10,000. *Held* that, while this argument had force, the asylum, as well as an institution named, which was conducting a hospital, and also the "Little Sisters of the Poor" and the "Mission of the Immaculate Virgin," were "societies" in a broad sense, and were all included as residuary legatees, since it might reasonably be inferred that, if he did not intend to include them all, he would more clearly have indicated those intended.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1109; Dec. Dig. ⊕514.]

**5. WILLS ⊕627, 777—RESIDUARY DEVISE OR BEQUEST—INCAPACITY TO TAKE.**

Where a will directed that the residuary estate should be divided among 15 charitable and religious institutions, they took as tenants in common, and each took a share in proportion to the total number of beneficiaries designated, and, if any of the designated beneficiaries could not take, the legacy passed as intestate property; the entire residuary estate not being divided among those capable of taking.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1452–1459, 2003; Dec. Dig. ⊕627, 777.]

**6. WILLS ⊕705—ACTIONS TO CONSTRUE WILL—REFERENCE—MATTERS TO BE DETERMINED.**

Code Civ. Proc. § 1015, provides that the court may direct a reference to take an account and report to the court thereon, either with or without testimony, after interlocutory or final judgment, or where it is necessary to do so for the information of the court, and also to determine and report upon a question of fact arising in any stage of the action upon a motion or otherwise, except upon the pleadings. In a suit to construe a will containing a residuary bequest to certain charitable and religious institutions, to have such legacies adjudged void and barred by limitations, and to have it adjudged that plaintiff was owner and entitled to all the funds off the estate remaining in the hands of a trustee, the decree provided that such of the institutions as had failed to prove their incorporation or capacity to take the bequests might do so on the accounting. *Held* that, if it was deemed more convenient to make the proof before the referee on the accounting than on the trial, it was competent for the court so to direct; though the question as to the capacity to take did not affect the accounting, as such question was not involved in the principal issue, or in the relief demanded, and might be reserved for decision on the report of the referee, without prejudice to the rights of any party.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1682; Dec. Dig. ⊕705.]

7. WILLS ⬤═703—ACTIONS TO CONSTRUE WILL—BURDEN OF PROOF.

In an action to construe a will, and to have it adjudged that legacies therein were void and barred by limitations, and that plaintiff was entitled to all the remaining funds of the estate, religious, and charitable institutions to which legacies were given should show, not only their incorporation, but that it was competent for them to take the legacies.

[Ed. Note.—For other cases, see Wills, Dec. Dig. ⬤═703.]

8. WILLS ⬤═15—RESTRICTIONS ON GIFTS FOR CHARITABLE AND RELIGIOUS PURPOSES—STATUTORY PROVISIONS.

The amount devised and bequeathed by a will for charitable uses did not exceed the amount authorized by statute, where the amount so devised and bequeathed, excluding that bequeathed on a contingency which never happened, was considerably less than the amount which could lawfully be given to such uses.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 36; Dec. Dig. ⬤═15.]

9. LIMITATION OF ACTIONS ⬤═172—AVAILABILITY—PERSONS ENTITLED TO RELY ON STATUTE.

Where a trustee, substituted for the executors and trustees named in a will, had not attempted to invoke limitations against the payment of residuary legacies, a son of the testator could not invoke the statute; no claim being made against him by the residuary legatees.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 657; Dec. Dig. ⬤═172.]

10. LIMITATION OF ACTIONS ⬤═172—AVAILABILITY—PERSONS ENTITLED TO RELY ON STATUTE.

A party, coming into a court of equity as plaintiff, could not, in a suit for the construction of a will and to have certain legacies adjudged void, invoke limitations against such legacies.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 657; Dec. Dig. ⬤═172.]

11. LIMITATION OF ACTIONS ⬤═172—AVAILABILITY—PAYMENT OF LEGACIES.

A will gave the residuary estate, as well as other bequests, to charitable uses, and also gave the corpus of two trust funds to such uses, in the event that a son died before attaining his majority. Because of the possibility that, if the son died, the amount given to charitable uses would exceed that permitted by statute, a decree of the Surrogate's Court settling the accounts of the executors and trustees directed them to retain the residuary estate for distribution as directed by the court upon the happening or determination of the contingency. The purpose of this provision was well understood by all parties, and all parties acquiesced in the court's assumption of jurisdiction to so provide. Held that, whether or not the court was authorized to make such a provision, limitations could not be invoked against the claims of the residuary legatees, and the fact that the son was an infant when the decree was made did not change the situation, he not being prejudiced, as he was not entitled to any part of the fund lawfully bequeathed or devised to a residuary legatee, especially as there was room for the contention that the statute impliedly authorized the withholding of the distribution of the estate under Code Civ. Proc. § 2743, providing that where an account is judicially settled, and any part of the estate remains and "is ready to be distributed," the decree must direct the distribution thereof.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 650½; Dec. Dig. ⬤═172.]

Appeal from Special Term, New York County.

Action by John H. Hughes against John H. Stoutenburgh, as trustee, and others. From an interlocutory judgment, entered pursuant to a de-

cision on the trial of the issues at Special Term, plaintiff and the defendant Stoutenburgh, as trustee, bring separate appeals. Modified and affirmed.

See, also, 158 App. Div. 920, 143 N. Y. Supp. 1123.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

Walter E. Godfrey, of New York City, for appellant Hughes.

J. Bleecker Miller, of New York City, for appellant and respondent Stoutenburgh.

Joseph F. Daly, of New York City, for respondent Roman Catholic Orphan Asylum.

John E. Donnelly, of New York City (Alfred J. Amend, of New York City, on the brief), for respondent Sisters of the Poor of St. Francis.

Michael J. Driscoll, of New York City (John F. Couch, of New York City, on the brief), for respondents Church of St. James, Church of St. Teresa, Church of St. Mary, and Church of Transfiguration.

LAUGHLIN, J. This action, which was commenced on the 23d day of April, 1907, was brought for the construction of the will of plaintiff's father, John H. Hughes, who died on the 22d day of November, 1887, leaving a widow and plaintiff, but no other heir at law or next of kin, and to have certain legacies therein contained declared void, and to have it adjudged that the right to all unpaid legacies is barred by the statute of limitations, and that plaintiff is now the owner and entitled to receive all residuary and other funds of the estate remaining in the hands of the trustee, less reasonable commissions and expenses.

The will and a codicil thereto were duly admitted to probate in the county of New York, and letters testamentary were issued to the executors and trustees named therein on the 9th day of December, 1887. The testator left both real and personal property, and the executors were authorized to sell the real estate.

[1] The first judicial settlement of the accounts of the executors was made by a decree of the Surrogate's Court on the 27th day of April, 1891, on their application. It appears thereby that the executors had sold the real estate and were charged with $16,318.68, the inventoried value of the personal property, and $71,974.20, the proceeds of the sales of real estate, including $6,852.29 "income," aggregating $88,-292.88, and were credited with loss on inventory, debts not collected, disbursements made, as shown by Schedule C of their accounts, $34,-985.77, and by Schedule E thereof, $3,448.50, which schedules are not in the record now before the court, aggregating $38,629.10, leaving in their hands cash and securities aggregating $38,629.10. It was also found by that decree that the gross amount of testator's estate at the time of his death was $81,245.78, and that his total debts were $24,-993, leaving the net value of his estate $56,252.76, and that the amount lawfully distributable under chapter 360 of the Laws of 1860, among the churches, institutions, and societies named in the will, was one-half

that amount, or $28,126.38, which was in accordance with the rule prescribed in Hollis v. Drew Theological Seminary et al., 95 N. Y. 166.

The decree also fixed the commissions which the executors were authorized to deduct and retain from the amount then remaining in their hands, and they were then directed to pay from the balance certain sums as an allowance to a special guardian, and for costs, and to retain and invest $18,750.92, being one-third of the net amount of the estate, and to hold the same in trust to pay the income thereof to the widow during her life as directed by clause "First" of the codicil, by which that provision was made for the widow in lieu of dower, and to retain out of the balance the sum of $5,000, and to invest and hold the same in trust to apply the income thereof to the support and education of plaintiff during his minority, as directed by clause "Third" of the will. The executors were then directed to pay all other specific legacies, which included a total of $9,200 for charitable uses. They were also directed to retain the remainder, found to be $17,710.14, "upon the trusts and with the powers provided in the eighteenth paragraph of" the will, "to be distributed as therein directed, or according to law, under the further direction of this court upon the happening or determination of the contingencies, or either of them, mentioned in the third paragraph of" the will and in the second paragraph of the codicil.

[2] All parties in interest acquiesced in that decree, and the executors complied therewith. The dower of the widow was thereby released as of the date of the death of the testator, and it was rightly not considered in determining whether more than one-half the estate was given to charitable uses. Lord v. Lord, 44 Misc. Rep. 530, 90 N. Y. Supp. 143. See, also, Chamberlain v. Chamberlain, 43 N. Y. 424.

The third paragraph of the will provided that the respondent the Roman Catholic Orphan Asylum should receive the $5,000, set apart for the support and education of plaintiff during minority, if he died before attaining his majority; and the second paragraph of the codicil provided that plaintiff, if living at the death of his mother, should receive the principal set apart for her life use, and that in the event of his earlier death the Roman Catholic Orphan Asylum should receive $10,000 of it, and the remainder should be "divided and distributed to and among the churches and societies" named in the will. It is recited in said decree that the special guardian of the plaintiff, who was then an infant, reported to the Surrogate's Court that the testator had attempted to give to charitable uses more than was authorized by said act of 1860.

[3] The eighteenth paragraph of the will gave the residuary estate to various churches, institutions, and societies, bequests and devises to which would be subject to the provisions of chapter 360 of the Laws of 1860, limiting such devises and bequests, where the testator leaves a husband, wife, child, or parent, to one-half of the net estate after the payment of debts. It is evident from the decree, and from the opinion of the surrogate pursuant to which it was entered, that the executors were so directed to hold the residuary estate until, by the happening of the contingencies with respect to the ownership of the corpus of

the two trust funds, it could be determined whether the distribution of the whole or any part of the residuary estate as directed by the testator would contravene the provisions of said statute. The plaintiff became of age on the 12th day of April, 1904, and although it is not expressly provided in the third paragraph of the will that he then became entitled to take the corpus of the trust fund of $5,000, the income of which until that time was to be used for his support and education, still it is plain that such was the intention of the testator, for it is expressly provided that, in the event plaintiff should not live to attain his majority, such corpus should go to the Roman Catholic Orphan Asylum. The widow died on the 13th day of March, 1905, and thereupon by the express terms of the second paragraph of the codicil the plaintiff became entitled to the principal set apart for the life use of his mother. It appears that both of these trust funds have been paid over to the plaintiff, and evidently that was authorized by the court or all parties acquiesced therein. Both contingencies, therefore, have passed, and the amount bequeathed and devised to charitable uses was not increased by either.

Another decree was made *by the same surrogate* on the 12th day of September, 1892, settling a supplementary account of the executors. It relates solely to the balance of $17,710.14, being the residuary estate, which they were directed by the first decree to hold. It is therein recited that it was claimed by the executors that the first decree did not fully adjudicate with respect to the rights of the widow in and to that fund, in that she had not been allowed the interest to which she was entitled on the fund to be set apart for her use, and the court was requested to decide the question. The surrogate sustained that claim, and also found that plaintiff had not, by the former decree, been allowed interest to which he was entitled. The second decree accordingly directed further deductions from said residuary fund for the widow, for plaintiff, and for costs and allowances, leaving a net balance of $12,977.07, which the executors were directed to invest, in so far as they had not invested it, and—

"to hold said sum, or the securities in which the same has been or shall hereafter be invested, and the interest, income, and profits thereof, upon the trusts expressed in the said will, or such of them as have not been heretofore fully executed, or according to law, under the further direction of this court."

On the 17th day of October, 1903, the last surviving executor died. On the 23d day of November, 1903, by a decree of the Surrogate's Court, the defendant Stoutenburgh was appointed substituted *trustee* in place of the *executors and trustees* named in the will, and it was therein provided that, upon his qualifying, the real and personal estate of the testator formerly vested in the deceased trustees should vest in him "upon the several trusts in the said will declared concerning the same." It appears by a decree of the Surrogate's Court made on the 21st day of June, 1905, that the accounts of the two surviving executors and trustees were judicially settled on the 8th day of January, 1903, and that they were then charged with having on hand the two trust funds, and also the sum of $17,194.73, for the residuary estate, and that this residuary estate on the 21st day of June, 1905, amounted

to $20,349.20, with the balance of which, not theretofore paid over to the substituted trustee, their representatives were charged; and the trustee was directed to hold the property received by him upon the trusts *declared* by the will, "and in and by the decree" of April 27, 1891.

It appears by the answer of the substituted trustee that all of the property which came into his hands is set forth and accounted for by his account annually filed in 1905, 1906, and 1907; but they are not set forth, and were not proved. The substituted trustee, as executor of the estate of the widow, asserted claim to the residuary estate as intestate property, and also pleaded the statutes of limitations against the claims of the residuary legatees. It appears that the will has been fully executed, with the exception of distributing the residuary estate. On the trial, after formal proof with respect to a demand by plaintiff for the balance of the residuary estate in the hands of the trustee, and with respect to the incorporation of some of the defendants, and the decrees to which reference has been made, and certain other formal proof, and a statement of the claims of the respective parties, and motions for judgment on the pleadings, the case was closed. Thereafter the court made a decision authorizing the entry of the interlocutory judgment from which this appeal was taken.

[4] By the eighteenth paragraph of the will the testator gave, devised, and bequeathed all the rest, residue, and remainder of his estate, both real and personal, to his executors, "to divide and distribute the same among the several churches and societies hereinbefore named, share and share alike." In the preceding paragraphs of the will, five churches and five societies bearing the same name, but connected with different churches, are designated *as churches and societies* respectively; and five other institutions are named, viz., said Roman Catholic Orphan Asylum, "Sister Eugenie, for the benefit of the Poor School connected with" a church to which a specific legacy was given, "Mission of the Immaculate Virgin in Lafayette Place, in the City of New York," "Little Sisters of the Poor, connected with St. Joseph's Home" in Seventieth street, in the city of New York, and "St. Francis Hospital in Fifth Street, in the city of New York." By "St. Francis Hospital in Fifth Street" undoubtedly the defendant Sisters of the Poor of St. Francis, which conducted the hospital, was meant. Johnston v. Hughes, 187 N. Y. 446, 80 N. E. 373. Only 8 of said 15 churches, societies and institutions claiming to be residuary legatees have appeared and pleaded, and only 4 have been shown by evidence or conceded to have been incorporated and competent to take bequests and devises, and even those have not shown that they had not theretofore taken all permitted by their respective charters or other laws.

It is contended in behalf of the plaintiff that 4 of these 15, namely, the Roman Catholic Orphan Asylum, Sisters of the Poor of St. Francis, Little Sisters of the Poor, and Mission of the Immaculate Virgin, are not *societies* within the provisions of paragraph 18 of the will. The only provisions expressly relating to the Roman Catholic Orphan Asylum in the will and codicil are those contained in the third paragraph of the will and in clause second of the codicil, the substance of

which has already been stated. The Roman Catholic Orphan Asylum was not given a *specific* legacy, and the express provisions with respect to it are not directly connected with the provisions with respect to churches and societies designated as such; and in the second clause of the codicil the testator uses the words "churches and societies" in a manner which it is claimed indicates that he did not consider that he had designated the asylum as a church or society; for in the event that the plaintiff predeceased his mother the testator gave $10,000 of the corpus of the trust fund for the benefit of the mother to the asylum, and directed that the balance be divided and distributed "to and among the churches and societies in my said will named, share and share alike." It is contended that, if he classed the asylum as a society, he would likely have here inserted the word "other" before "societies," for otherwise he would be giving it a further share in the remainder of that fund. These arguments are not without force; but the asylum and the three other institutions which were given and have received specific legacies, while neither churches nor societies in the strict sense of the word, are in a broader sense "societies" (see 25 Am. & Eng. Ency. of Law [2d Ed.] 1130), connected with a particular religious denomination in which the testator appears to have been deeply interested, and if he did not intend to include them all as residuary legatees, it is reasonably to be inferred that he would have more clearly indicated those he intended should take. I am of opinion, therefore, that they are included as residuary legatees and entitled to take, if they are "otherwise" competent and entitled to take.

It has been assumed, without proof or concession, that some of said societies and institutions were not incorporated. The appellants contend that unincorporated societies cannot take, and such appears to be the law. Fralick v. Lyford, 107 App. Div. 543, 95 N. Y. Supp. 433, affirmed 187 N. Y. 524, 79 N. E. 1105; Owens v. Methodist Episcopal Church, 14 N. Y. 380, 67 Am. Dec. 160; Catt v. Catt, 118 App. Div. 750, 103 N. Y. Supp. 740. See, also, White v. Howard, 46 N. Y. 144. If, however, an educational or other charitable use is specified with sufficient definiteness, it may be that the said bequest to Sister Eugenie for the benefit of the "Poor School," at least, with respect to which there has been no appearance, can be sustained on the thoery that a valid lawful trust was created, even though the "Poor School" was not incorporated or competent to take. See chapter 701, Laws 1893, as amended by chapter 291, Laws 1901, and Manley v. Fiske, 139 App. Div. 665, 124 N. Y. Supp. 149, affirmed 201 N. Y. 546, 95 N. E. 1133, Ely v. Ely, 163 App. Div. 320–339, 148 N. Y. Supp. 691, and Matter of Miller, 149 App. Div. 113, 133 N. Y. Supp. 828; but we do not decide the question now.

[5] The decision provides that the residuary estate shall be equally divided among the residuary legatees who are duly incorporated, and that the residuary legatees who failed to prove their incorporation or capacity to take on the trial of the issues at Special Term may do so on the accounting, and then proceeds to divide the residuary estate into fifteenths, on the theory that all churches and societies referred to in the residuary clause are entitled to take; and the interlocutory judg-

ment directs that the residuary estate be divided among the 15 churches, societies, and institutions, or "such of them as were incorporated at the date of the deceased's death." These provisions of the decision and interlocutory judgment cannot be sustained. The beneficiaries competent to take the "residuary" estate take as tenants in common, and only take a share of the residuary estate in proportion to the total number of beneficiaries designated; and where a beneficiary designated cannot take, the legacy passes as intestate property. Matter of Hoffman, 201 N. Y. 247–255, 94 N. E. 990; Booth v. Baptist Church, 126 N. Y. 215, 28 N. E. 238; Matter of Kimberly, 150 N. Y. 90, 44 N. E. 945. In Chamberlain v. Chamberlain, supra, it appears by the reporter's note at page 447 that on the settlement of the decree in that case the decision was so modified that one of the two residuary legatees to whom the residuary estate was given in equal shares was permitted to take part of the legacy to the other, if the other was not entitled to take it all; but, if such was the decision, it must be deemed to have been overruled by the later authorities herein cited. I am therefore of opinion that the plaintiff is entitled to take the share of any beneficiary not competent to take, or not entitled to take, and therefore the interlocutory judgment should be modified accordingly.

[6, 7] It is also contended by appellants that the court should have decided which of the beneficiaries are incorporated and are entitled to take, instead of leaving those questions to be determined from evidence to be offered on the accounting. Those questions do not affect the accounting. They merely affect the distribution. Evidently it was deemed more convenient to make the proof before the referee on the accounting, than on the trial; and we think it was competent for the court so to direct, as those questions are not involved in the principal issues or in the relief demanded, and they may be reserved for decision on the report of the referee without prejudice to the rights of any party. See Code Civ. Proc. § 1015. The residuary legatees, however, should show, not only their incorporation, but that it is competent for them to take these legacies. See Haxtun v. Corse, 2 Barb. Ch. 521; Fowler's Charitable Uses, pp. 81, 97; Marx v. McGlynn, 88 N. Y. 376; Betts v. Betts, 4 Abb. N. C. 317. These defendants who have appeared and answered are permitted to appear before the referee and prove that they are entitled to a share in the estate; this determination being without prejudice to an application by either of the defendants in default to open the default and interpose an answer and present their proof to the referee.

The plaintiff appellant further contends that one-third of the estate was not set apart for the use of his mother, and that she did not receive the income of one-third, and that upon her death he did not receive the one-third. This argument appears to be made on the erroneous theory that the will required one-third of the gross estate, without deduction for debts, to be set apart for the use of plaintiff's mother. Manifestly the testator intended that only one-third of his net estate should be so set apart; and such has been the construction of the will from the outset, by decrees binding upon and acquiesced in by all parties.

[8] The plaintiff also contends that the court erred in holding that the testator did not leave more than one-half of the property to charitable uses, and claims that an accounting is essential to the decision of that question. The court was right in holding as matter of law that the estate bequeathed and devised for charitable uses was not in excess of the amount authorized by the statute. It could not be determined, until the happening of the contingencies with respect to the two trust funds, how much the testator had devised for charitable uses. But, those events having transpired without increasing the amount of bequests otherwise made to charitable uses, it now appears that the testator only devised to such uses the $9,200 in specific legacies and the residuary estate, which, by the first decree, was found to be $17,710.14. These two amounts aggregate $26,910.14, which is considerably less than the amount which it was adjudged by the original decree could lawfully be given to charitable uses.

[9-11] The plaintiff appellant alleged, in effect, that the residuary legacies became due and payable within one year from the first judicial accounting, which was on the 27th day of April, 1891, and he prayed that it be adjudged that the statute of limitations of either six or ten years is a bar to any right of the residuary legatees to payment of the legacies. The trustee did not presume to attempt to invoke the statute of limitations. Manifestly the plaintiff cannot invoke it, for no claim is made against him by the residuary legatees, and, moreover, he could not come into a court of equity as plaintiff and invoke it. Matter of Rogers, 153 N. Y. 316, 47 N. E. 589; Pratt v. R. C. Orphan Asylum, 20 App. Div. 352, 46 N. Y. Supp. 1035, affirmed Conkling v. R. C. Orphan Asylum, 166 N. Y. 593, 59 N. E. 1120; House v. Carr, 185 N. Y. 453, 78 N. E. 171, 6 L. R. A. (N. S.) 510, 113 Am. St. Rep. 936, 7 Ann. Cas. 185; C. C. P. § 413.

Furthermore, there is no merit in or precedent for this claim, and it is predicated on erroneous premises. It is manifest, and must have been perfectly well understood by all parties in interest, why the residuary legacies were not directed to be paid by the original decree, and all acquiesced in the assumption of the court of jurisdiction, in view of the provisions of the act of 1860, to direct the executors and trustees to hold the residuary estate until the happening of the contingencies with respect to the two trust funds. Regardless of whether or not the court was authorized so to decree, neither the plaintiff nor the trustee should be permitted to question it at this time, nor is it affected by the fact that the plaintiff was then an infant. He has not been prejudiced, for on no theory was he entitled to any part of the fund *lawfully* bequeathed or devised to a residuary legatee; and it would be unconscionable to permit him now to succeed thereto on the theory that such residuary legatees have not sooner proceeded, in defiance of the numerous decrees of the Surrogate's Court, to assert their rights as residuary legatees.

For like reason the trustee, as executor of the widow, cannot be heard to assert the statute of limitations. By a process of reasoning, which it is difficult to follow, it is claimed that the very decrees which forbid the distribution of the residuary estate until the happening of

the contingencies constitute adjudications that the residuary legatees are not entitled to take. It seems to be argued that, since the will created no trust with respect to the residuary estate, it was the mandatory duty of the court to direct its distribution, and that, having failed to direct its distribution to the residuary legatees, the decree should be construed as directing that it be held for the benefit of the next of kin of the testator. As already observed, the intention of the court in making the decrees requiring that the residuary estate be held was perfectly clear and recognized the rights of the residuary legatees; and their rights were never attempted to be repudiated by the executors or trustees, and are not now. There was at least room for the contention that the statute of 1860 impliedly authorizes the withholding of the distribution of an estate, where necessary to determine whether the amount devised or bequeathed to charitable uses is in excess of the amount authorized, and on that theory the moneys were not ready for distribution as contemplated by the provisions of section 2743 of the Code of Civil Procedure, which provides that the decree must direct the payment and distribution where "any part of the estate remains, and is ready to be distributed." It may be that the court might have directed the distribution of the residuary estate, which would have subjected the asylum to all risk with respect to the statute of 1860; but it is unnecessary to decide that question, for whether the distribution of the whole or any part of the residuary estate could have been obtained or compelled before the happening of the contingency to which reference has been made either by an application to the Surrogate's Court, or an appeal from the decree of the surrogate, or by action in the Supreme Court, need not now be considered, for, as held by the trial court, the rights of the residuary legatees were preserved by the decree.

It follows, therefore, that the decision and interlocutory judgment should be modified in accordance with the views herein expressed, so that the residuary legatees who are found to be competent to take, and may take without exceeding the limitations prescribed by the Legislature on their powers so to do, shall each take one-fifteenth of the residuary estate, and in case a residuary legatee was not competent to take, or could not take, the plaintiff shall take the one-fifteenth intended for such residuary legatee, and leaving all questions with respect to the competency and right of the residuary legatees to take, and with respect to the validity of any residuary legacy on the theory of its being in trust for a sufficiently definite charitable use, if not to a corporation authorized to take, to be decided on the coming in of the referee's report, and, as so modified, affirmed, without costs. Settle order on notice. All concur.