(92 Misc. Rep. 695)

### In re BROOKLYN TRUST CO.

### In re WEBB'S ESTATE.

(Surrogate's Court, Kings County. December, 1915.)

1. WILLS ⊙═▷15—DEVISE OR BEQUEST TO CHARITABLE INSTITUTION—LIMITATION ON AMOUNT—COMPUTATION.

In computing the fund of which one-half is to be paid to institutions which fall within the inhibition of Decedent Estate Law (Consol. Laws, c. 13) § 17, providing that no person having a husband, wife, child, or parent shall will to any charitable institution more than one-half of her estate, the estate should be taken at its value when testatrix died, and debts, but not administration expenses, be subtracted therefrom.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 36; Dec. Dig. ⊙═▷15.]

2. WILLS ⊙═▷15—DEVISE OR BEQUEST TO CORPORATE BENEFICIARIES—LIMITATION ON AMOUNT—COMPUTATION—DECREASE IN VALUE.

Where, by reason of delay in the distribution of such an estate, there have been decreases as well as appreciations in the value of the property, and have been accruals of interest or income, the decreases must be considered in determining the value of the estate as of the time of testatrix's death.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 36; Dec. Dig. ⊙═▷15.]

3. WILLS ⊙═▷15—DEVISE OR BEQUEST TO CORPORATE BENEFICIARIES—LIMITATION ON AMOUNT—VALUE OF REMAINDERS—APPRAISEMENT.

Where, in the application of such statute, it becomes necessary to include in the valuation of the estate the value of remainders, they, if vested, must be appraised by the use of the life tables.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 36; Dec. Dig. ⊙═▷15.]

In the matter of the petition of the Brooklyn Trust Company to render and settle its account as executor of the last will and testament of Matilda E. Webb, deceased. Decreed according to opinion.

Cullen & Dykman, of Brooklyn, for executor.

Rufus T. Griggs, of New York City, for objectants.

Theodore L. Frothingham, of New York City, for Brooklyn Hospital.

Percy S. Dudley, of New York City, for Long Island College Hospital.

R. F. Greacen, of New York City, for Brooklyn Home for Aged Men.

Lewis C. Grover, of Brooklyn, for Brooklyn Orphan Asylum.

Wood, Cooke & Scitz, of New York City, for Brooklyn Children's Aid Society.

Henry Joralemon Davenport, of Brooklyn, for Brooklyn Home for Consumptives.

David Provost, for House of St. Giles the Cripple.

Hubbard & Rushmore, for Home for Friendless Women and Children.

---

· KETCHAM, S. This accounting requires the application of section 17 of the Decedent Estate Law, which provides:

"No person having a husband, wife, child or parent, shall, by his or her last will and testament, devise or bequeath to any benevolent, charitable, literary, scientific, religious or missionary society, association or corporation, in trust or otherwise, more than one-half part of his or her estate, after the payment of his or her debts, and such devise or bequest shall be valid to the extent of one-half, and no more."

It thus becomes necessary to compute the fund of which one-half is to be paid to the institutions which fall within the inhibition of the statute.

[1] 1. There is then presented the injury: Is such fund to be ascertained by subtracting from the value of the estate left at the death of the testator only his debts, or by subtracting also the expenses of administration? The whole question was answered when it was held that the estate which was subject to the subtraction of the debts paid was the estate to be taken at its value when the testator died. Matter of Durand, 194 N. Y. 477, 488, 87 N. E. 677; St. John v. Andrews Institute, 191 N. Y. 254, 274, 83 N. E. 981, 14 Ann. Cas. 708; Hollis v. Drew Theological Seminary, 95 N. Y. 166, 177, 178; Chamberlain v. Chamberlain, 3 Lans. 348, 358; Frost v. Emanuel, 152 App. Div. 687, 689, 137 N. Y. Supp. 559; Rich v. Tiffany, 2 App. Div. 25, 28, 37 N. Y. Supp. 330; Harris v. American Bible Society, 4 Abb. Prac. (N. S.) 421, 428; Orphan Asylum v. White, 6 Dem. Sur. 201, 210.

It would impute absurdity to this interpretation of the statute to suppose that in the words "value at the time of death," or their equivalent, there was defined anything except the monetary measure at the time of death of the property of which the decedent did seised or possessed. While the cases cited contain nothing of authority or tolerance for a contrary view, they were followed and reinforced by express decisions which state the following formula, already adopted by this court:

"Ascertain the money value of the estate as it remained at death, subtract therefrom the amount of decedent's debts, pay one-half of the remainder to the corporate legatees," whose legacies were subject to reduction. Matter of Johnston, 76 Misc. Rep. 391, 137 N. Y. Supp. 166.

· In Matter of Teed, 59 Hun, 63, 12 N. Y. Supp. 642, s. c. 76 Hun, 567, 28 N. Y. Supp. 203, it is fairly apparent that, under this statute, the calculation of the share of certain religious and educational institutions was based upon the value of the estate at death, less both debts and testamentary expenses; and the case in both of its appeals is an authority against the present views of this court, although its influence is impaired by the fact that the point was not argued.

· In Hollis v. Drew Theological Seminary, 95 N. Y. 166, the question was not involved, but the statement was clearly made that the value of the estate was to be ascertained as of the time of death, which necessarily excluded any conclusion or suggestion that the value of the estate was to be that which it should bear after it was depleted by

expenses, and, further, that the value at the time of the testator's death was then to be taken after "paying his or her debts," in order to arrive at the sum from which the institutions should receive their statutory share.

In Orphan Asylum v. White, 6 Dem. Sur. 201, Mr. Surrogate Signor derives the rule from Hollis v. Drew Theological Seminary, supra, and in the calculation, spread in his opinion at page 210 of the report, holds that the only deduction to be made from the value of the estate as it stood at death is the amount of the debts.

In Chamberlain v. Chamberlain, 3 Lans. 348, the court states the rule as this court has declared it, and, at pages 358 and 359, closes its reasoning with the words:

"The deductions authorized are limited to that portion of the estate that may be required to pay the testator's debts, and, by implication, exclude everything beyond that, in determining the amount he (the testator) may devise to the corporations, societies and associations mentioned. So far as the testator attempted to exceed the restriction imposed by the statute, his will was invalid, within the express terms made use of. It was valid to the extent of the half of his estate he was permitted by its language to devise and bequeath; but not beyond that."

The court then, after ascertaining the amount of the estate, proceeds:

"And, as thus reduced, one-fourth of the estate of the testator left after the payment of his debts would be all that could be claimed by either of the legatees for which those legacies were provided."

In the same case on appeal (43 N. Y. 424) no real discussion is found, but the following language is used, with respect to legacies for charitable and educational institutions:

"If the two legacies, when ascertained, shall in the aggregate exceed in amount the one-half part of the estate after the payment of just debts, they must be reduced by proper deductions."

In Currin v. Fanning, 13 Hun, 458, the case of Chamberlain v. Chamberlain, supra, is regarded, not only as authority that the half is to be computed with reference to the estate at the time of the testator's death, but that the debts are to be first deducted. See page 473 of the report.

In Matter of Hughes, Surr. Decs. N. Y. Co. (1891), the computation rendered necessary by the statute in question proceeded upon the deduction of debts and without any subtraction of administrative expenses, though the latter item was substantial.

In Hughes v. Stoutenburgh, 168 App. Div. 512, 154 N. Y. Supp. 65, the will which was before the court was that which was involved in Matter of Hughes, supra. The opinion of the Appellate Division recites all of the figures which were involved in the decree in Matter of Hughes, which demonstrate that the decree therein was not based upon any subtraction from the value of the estate except debts, and says of the result reached by this calculation that it was in accordance with the rule prescribed in Hollis v. Drew Theological Seminary, supra.

157 N.Y.S.—43

In Estate of Colburn, 157 N. Y. Supp. 676, Mr. Surrogate Cohalan, in determining the amount reserved by this statute to legatees who were educational institutions, says:

"The amount which the above-named corporations may take is to be ascertained by computing the value of the estate, including the New Jersey real estate, as of the date of death of testator, subtracting therefrom the decedent's debts, and dividing the remainder by two. Administration expenses do not enter into the calculation and are not to be subtracted like the debts of the decedent."

The state of authority thus portrayed requires that in the decree to be entered herein the rule of calculation adopted in the Matter of Johnston, supra, must prevail.

[2] 2. By reason of delay in the disposition of the estate, there have been decreases, as well as appreciations, in the value of its property, and there have been accruals of interest or income. The decreases in the estate must be taken into consideration in ascertaining the value as of the time of death. When the amount is reached which is to be apportioned to the corporations named as legatees in the residuary clause and the individuals named therein as such legatees, the corporate beneficiaries must receive one-half of all additions, either to the principal of the estate or to the interest or income thereof. After this adjustment, the balance of such additions must be added to the share allotted to the individual legatees under the residuary clause, and this share must bear the administration expenses. Any other disposition would defeat the statute.

[3] 3. The remaining question is remarkable, not only in its essence and consequences, but in the dearth of relevant authority. The will provides as follows:

"Sixth. I give and bequeath to my trustee hereinafter named the sum of five thousand dollars, in trust, to invest the same and apply the income arising therefrom to my sister, Emma Louise Mallon, until she arrives at the age of sixty-five years, at which time I direct my trustee to pay the principal of said trust fund to her, if she be living, and if she be dead, then I direct that the principal of the trust fund shall form a part of my residuary estate.

"Seventh. I give and bequeath to my trustee hereinafter named the sum of forty-five thousand dollars, in trust, to invest the same and apply the income arising therefrom to my son, William F. Webb, until he arrives at the age of sixty-five years, at which time the principal of said trust fund may be paid to him by my said trustee, if in its opinion it deems it expedient so to do, but if it does not deem it expedient so to do, it shall continue to pay to him the income therefrom until such time as in its discretion it deems it wise to pay him the principal of said trust fund. If my son, William F. Webb, dies before attaining the age of sixty-five years, or if the principal of the said trust fund shall not have been paid to him as above provided, I direct upon his death that my trustee continue to hold the sum of ten thousand dollars, in trust, and to invest and reinvest the same, and to apply the income therefrom to my granddaughter Marie Webb, the daughter of my said son, until she attains the age of sixty-five years, at which time the principal of said trust fund shall be paid to her, if, in the discretion of the trustee it shall deem it wise to do so; if not, it shall continue to pay to her the income from such trust fund as long as she shall live. On the death of my granddaughter, if the principal of the trust fund shall not have been paid to her, as above provided, I direct that the principal of the trust fund shall be distributed equally among the following named charitable institutions: The Long Island College Hospital; the Brooklyn Home for the Aged Men; the Graham Home for Old Ladies; the Brooklyn Orphan Asylum; The Brooklyn Children's Aid

Society; the Brooklyn Society for the Prevention of Cruelty to Children; the Brooklyn Home for Consumptives; the Brooklyn Hospital; St. Giles' Home for Crippled Children; the Home for Friendless Women and Children on Concord Street, Brooklyn, New York. The difference between the original amount of the trust fund for the benefit of my son William F. Webb and the trust then established herein for the benefit of my granddaughter, namely, thirty-five thousand dollars, shall be distributed equally on the death of my said son, William F. Webb, among the charitable institutions above mentioned, provided always that my said son shall not have attained the age of sixty-five years, or if the principal of the said trust fund shall not have been paid to him by my trustee, as above provided.

"Eighth. I give to my trustee the sum of forty-five thousand dollars, in trust, to invest and reinvest the same, and to apply the income therefrom to my daughter, Lillian M. Etheridge, until she arrives at the age of sixty-five years, at which time the principal of said trust fund may be paid to her by my said trustee, if in its discretion it deems it expedient so to do, but if it does not deem it expedient so to do, it shall continue to pay to her the income therefrom until such time as in its discretion it deems it wise to pay her the principal of the said trust fund. If my daughter, Lillian M. Etheridge, dies before attaining the age of sixty-five years, or if the principal of the said trust fund shall not have been paid to her as above provided, I direct that upon her death the income therefrom to be paid to my grandson, Charles W. Etheridge, the son of my said daughter, Lillian M. Etheridge, during his natural life, and after his death, I direct that the principal of the trust fund shall be distributed equally among the charitable institutions mentioned in the seventh paragraph of this my will.

"Ninth. All the rest, residue and remainder of my estate, real and personal, I give, devise and bequeath to the charitable institutions mentioned in the seventh paragraph of my will. If it shall appear at my death that I have bequeathed to the charitable institutions above named more than one-half of my estate, after the payment of my debts, I give, devise and bequeath the excess thereof to my children, or to the issue of any of them who may have died before me leaving issue him or her surviving."

Where in the application of section 17 of the Decedent Estate Law it becomes necessary to include in the valuation of the estate the value of remainders, they, if vested, must be appraised by the use of the life tables. In the present case, the remainder limited to the residuary legatees under the sixth paragraph is plainly within this rule, and its value at the testator's death must be regarded in the statutory calculation.

Under the two trusts of $45,000, the remainders are hopelessly contingent, and there is no basis for their valuation. If the estate, exclusive of these funds, should now be divided according to statute, then, in the happening of one or more of the contingencies upon which the destination of the funds depends, either the institutions, or a child of the testatrix, would receive $45,000, and perhaps $90,000, more than had been allotted in the first division.

Cases have arisen in which there was no possible basis for ascertaining the value at the death of the testator of contingent remainders, and it has been held therein that there could be no computation under the statute until the happening of the contingencies (Rich v. Tiffany, 2 App. Div. 25, 37 N. Y. Supp. 330; Hasbrouck v. Knoblauch, 59 Misc. Rep. 99, 112 N. Y. Supp. 159); but in these cases the only estate which was the subject of apportionment to the institutions was the contingent remainder. The law was therefore satisfied by waiting until the remainders should mature.

In Hughes v. Stoutenburgh, 168 App. Div. 512, 154 N. Y. Supp. 65, the inequality which the court must avoid in the case at bar was not only illustrated, but actually put into inequitable operation. There, in the original decree, the sum to be apportioned to the charities was $28,126.38. This took no account of trusts under which there was secured to the same corporations certain contingent remainders, and it is apparent, at page 523 of the report (154 N. Y. Supp. 74), that these contingencies had occurred without adding to the amount of the bequests otherwise made to charitable uses, and that the charities had actually received a sum substantially less than the amount which the statute assured them. The result thus brought about would have been avoided, and a just solution would have been secured, if the original decree had impounded enough of the general estate to have secured ultimate equilibrium between the institutions and the other persons concerned in opposition to their interests.

The case last cited is the only one disclosed by counsel or discovered by the court in which the facts were such that the statute might well have been defeated if the general estate had been paid away before the extinction or maturity of the conjectural remainder. Except for the warning to be derived from the mischance which happened in that case we are without known authority.

There can be but one way to fulfill the statute. The executor must retain from the estate, not devised in trust, the sum of $90,000, and must so apply the several halves thereof that, as the remainders under each of these $45,000 trusts fall in, an equality may be established between the institutions and the individuals concerned in the division of the whole estate. These views may be embodied in the decree.

Decreed accordingly.